# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

UNITED STATES OF AMERICA

v.                                                  No. 5:15-cr-23-BJB

CHRISTOPHER FORD

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Christopher Ford is serving a 240-month federal prison sentence for conspiracy to possess with intent to distribute methamphetamine, distribution of methamphetamine, and unlawfully possessing firearms despite a previous felony conviction. Although his pro se pleadings are not entirely clear, when read charitably they appear to ask this Court to do three things. First, "clarify" the nature of his plea agreement and "compel" the Commonwealth of Kentucky to immediately impose and run an anticipated term of imprisonment stemming from a parole violation concurrently with his federal term of imprisonment and remove his state detainer. Second, and in the alternative, instruct Kentucky's parole board to hold a hearing and conclude that any future state imprisonment should run concurrently with the federal sentence he is currently serving. Third, reduce his federal sentence under 18 U.S.C. § 3582.

This Court, however, lacks authority to enter the first and second requested orders. Federal courts lack general supervisory authority over state sentencing and parole decisions. And as to the third, Ford hasn't exhausted his administrative remedies or shown that his circumstances warrant compassionate release. So the Court denies his motions.

## I.

Ford was arrested in August 2015, indicted in federal court in September 2015, and pled guilty to all counts of a superseding indictment under a Rule 11(c)(1)(C) plea agreement in January 2017. When he was arrested, Ford was on parole (and had been since February 2014) for a state conviction for manufacturing methamphetamine and engaging in organized crime. His federal C-plea agreement required the government, at sentencing, to "agree that the sentence of imprisonment imposed in this case run concurrently to the undischarged portion of [his] sentence in Ballard Circuit Case Number 08-CR-00021." DN 106 at 6–7. (As far as the record reflects, the only undischarged state sentence at issue was the paroled portion of the

2008 Ballard Circuit sentence, originally imposed as 2 consecutive 15-year terms for the 2 state charges.) Judge Russell accepted the plea and sentenced Ford to the agreed term of 240 months' imprisonment, DN 178 at 23, well below the sentencing-guideline recommendation of life imprisonment, Presentence Investigation Report (DN 154) at 39. Although Judge Russell didn't mention the issue of concurrent sentences aloud during the sentencing hearing, the prosecutor did so at the plea hearing. DN 168 at 26. And Judge Russell advised Ford that the new federal convictions could cause the Commonwealth to revoke his parole on the older state charges. *Id.* at 17.

Several years later, Kentucky issued a parole-violation warrant based on Ford's felony conviction in this case.[1] According to Ford, he first learned of the pending parole-violation detainer on January 13, 2022. DN 277-1 at 11. Ford then filed several pro se motions, discussed below, asking this Court to order the Commonwealth to either remove his detainer on the parole violation or sentence him to serve any future state sentence concurrently with his ongoing federal sentence. Ford also sought an order instructing the federal Bureau of Prisons, for its part, to enforce the C-plea agreement by specifying that any term of state imprisonment for the parole violation would run concurrently with his federal sentence. DN 281 at 1.

## II.

Ford seeks to avoid "extend[ing] the term of present [federal] imprisonment," which he says would occur if the Commonwealth later imposes an additional term of imprisonment for his parole violations. DN 277. This, he asserts, would "breach" his plea agreement. *Id.*[2] So he wants a "court order of immediate concurrency of any violation term the State of Kentucky Parole Board intends to issue." *Id.* (cleaned up); *see also* DN 281 (requesting order to "compel" the Commonwealth to "remov[e]" his detainer). But this Court lacks authority to do so. To be sure, a federal judge may impose a first-in-time federal sentence and order it to run concurrently with a subsequent state sentence. *See Setser v. United States*, 566 U.S. 231, 235–37 (2012)

---

[1] A letter from the Kentucky Department of Corrections Division of Parole Board Support informed Ford that his state parole automatically terminated due to a felony conviction for a crime committed during his supervision. The letter adds: "Once you have satisfied your present [presumably federal] sentence, you will return to the custody of the Kentucky Department of Corrections to resume service of your sentence." DN 279-1 at 1.

[2] Ford filed a "motion to show cause," in which he asserts that "the Prosecution is failing to abide by its portion" of the plea agreement. DN 290. "[B]y failing to raise" his claim "on direct appeal," however, Ford has "waived" his claim that the Government breached his plea agreement by not effectuating the provision calling for concurrent federal and state sentences. *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). In any event, Ford hasn't explained *how* the federal government breached the plea agreement or what if any promise the federal government made but didn't keep with respect to the separate state proceeding, which hadn't commenced when the federal court entered final judgment in this case.

(interpreting 18 U.S.C. § 3584). But that sentence doesn't bind the state judge; the second-in-time state sentence will specify whether the defendant will receive credit from ongoing federal custody against the state sentence. *See id.* at 241. If a defendant "serves his federal sentence first, the State will decide whether to give him credit against his state sentences without being bound by what the district court or the Bureau said on the matter." *Id.*

Here, Ford began serving his federal sentence well before Kentucky issued a parole-violation detainer. *See* DN 277-1 at 12. And no state resentencing (or parole revocation) has yet occurred. Ford's C-plea, which the federal sentencing judge accepted, made clear that the parties agreed that his federal sentence should run concurrently to the undischarged portion of Ford's state sentence—that is, any future term of revoked parole. But this Court can neither order Kentucky to withdraw the state detainer nor to immediately impose a new term of imprisonment. *See, e.g.*, *United States v. Langham*, 670 F. App'x 991, 992 (10th Cir. 2016); *United States v. Millan-Sanchez*, 680 F. App'x 638, 639 (9th Cir. 2017). At bottom, while the Court "had the authority to impose a federal sentence" concurrently with Ford's "anticipated state sentenc[e], the state sentencing court is not 'bound by what the district court … said on the matter.'" *United States v. Lincoln*, No. 22-13646, 2023 WL 4576299, at *3 (11th Cir. July 18, 2023) (quoting *Setser*, 566 U.S. at 241).[3]

In explaining the reasons for denying these motions, however, this discussion may supply some of the "clarity" Ford seeks regarding the federal government's agreement and the federal court's acceptance that the federal sentence would run concurrently with any future state sentence. *See* DN 277 ("motion for clarification"). Beyond that, this Court lacks authority to control future decisions that may or may not be made in state proceedings with respect to Ford's parole revocation. If and when the issues ripen, of course, Ford may pursue any administrative and judicial remedies available to him in state court.

### III.

In the alternative, Ford asks whether the Court "could instruct the State Probation/parole to hold [a] Hearing such that it may be run concurrent to this Federal term of imprisonment." DN 282 at 2. "[T]he Parole Board," however, "is not a party," so the Court is "without jurisdiction to address" this request. *Desmone v. Adams*, 165 F.3d 27 (table), 1998 WL 702342, at *3 (6th Cir. Sept. 23, 1998) (noting

---

[3] Although not entirely clear, one of Ford's motions might be read to suggest a variant on this relief: that this Court should order the state court to limit any state sentence for the parole violation to one that would not extend beyond the expiration of his federal sentence. *See* DN 281 at 1 ("The sentence term given the Petitioner in" this federal case is or should be treated as "the total term of imprisonment for the Petitioner"). To the extent Ford makes this request, it would fail for the same reason discussed above: the federal court may not control the state court's sentencing decision in these circumstances.

3

Parole Board wasn't named in § 1983 suit in federal court); *see also Cobb v. Mendoza-Powers*, 1:10-cv-642, 2011 WL 5526324, at \*9 (E.D. Cal. Nov. 14, 2011) ("The Court is unable to issue an order against … the parole board because [it is] not a party in this action.").

Even if the Court did have authority over Kentucky's parole board, granting Ford's request would be inappropriate. Ford asserts that the Commonwealth, by failing to hold a hearing regarding his parole revocation, has "refuse[d] to comply" with *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) and *Morrissey v. Brewer*, 408 U.S. 471 (1972). DN 282 at 1. Those decisions held that the Fourteenth Amendment's Due Process Clause guarantees defendants a preliminary and final parole-revocation hearing. *See Gagnon*, 411 U.S. at 786 (probation); *Morrissey*, 408 U.S. at 485–88 (parole). But the Commonwealth "has no constitutional duty to provide [Ford] an adversary parole hearing until he is taken into custody as a parole violator by execution of [a] warrant." *Moody v. Daggett*, 429 U.S. 78, 89 (1976). "When a defendant's 'confinement and consequent liberty loss' is due to an intervening criminal conviction—and not arrest on a warrant for violating his [parole]—'there is no requirement for an immediate hearing.'" *United States v. Ivy*, 678 F. App'x 369, 373 (6th Cir. 2017) (quoting *Moody*, 429 U.S. at 86). And Ford's "present confinement" does not "derive" from the "outstanding parole violator warrant" (because he hasn't been released to state custody), so he's not currently entitled to a hearing. *Moody*, 429 U.S. at 86.

## IV.

Ford also appears to ask the Court to reduce his sentence under 18 U.S.C. § 3582. DN 285. He requests, again, that the Court order the Commonwealth to run his state sentence concurrently with Ford's federal sentence—or at least to hold a parole hearing, which, as explained above, the Court may not do. *See id*. at 5.[4] To the extent Ford is asking for compassionate release, this is his second time doing so. Judge Russell denied his first motion in April 2021 because Ford didn't show that extraordinary and compelling reasons justified his release, and because the § 3553(a) factors militated strongly against a sentence reduction. *See United States v. Ford*, No. 5:15-cr-23, 2021 WL 1395201, at \*3–5 (W.D. Ky. Apr. 12, 2021). Ford offers

---

[4] Although one of Ford's many motions is styled as a "motion under 18 U.S.C. § 3582 for reconsideration of sentence or *Gagnon v. Scarpelli* for probation/parole hearing demand," DN 285 (cleaned up), his reply in support of that motion states that it is actually one under § 3584. DN 288 at 1. But § 3584 authorizes a federal court to impose a concurrent or consecutive term of imprisonment at the time the court first imposes a sentence, not retroactively after a subsequent state-court sentencing. "Section 3584 does not provide this court with any authority to substantively alter a sentence …." *United States v. Silliman*, No. 3:07-cr-97, 2010 WL 2584197, at \*1 (W.D. Ky. June 23, 2010) (quoting *Wilson v. United States*, 969 F. Supp. 1054, 1057 (E.D. Mich. 1997)). So to the extent Ford relies on § 3584, the Court denies that request and considers this motion under § 3582.

4

nothing that would change that analysis now: he didn't exhaust his administrative remedies, identify extraordinary and compelling reasons warranting his release, or explain why release would be appropriate under the § 3553(a) factors.

District courts generally apply a "three-step inquiry" in considering a compassionate-release motion filed under § 3582(c)(1)(A). *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quotation omitted). Release is appropriate only if (1) the prisoner shows that "extraordinary and compelling reasons warrant the [sentence] reduction," (2) the Court determines that "any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the prisoner "persuade[s] the district judge to grant the motion after the court considers the § 3553(a) factors." *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc) (quotations omitted). Those § 3553(a) factors include the prisoner's "history and characteristics, including his propensity to be a danger to the community upon release, as well as the nature and circumstances of his offense." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing § 3553(a)(1)–(2)). As to the policy statements, because Ford (rather than the Bureau) has filed the motion,[5] the Court may "skip step two" of the three-step inquiry. *United States v. Hampton*, 985 F.3d 530, 532 (6th Cir. 2021) (quotation omitted). But "[i]f either of the remaining prerequisites are lacking, [the] motion fails." *United States v. Roman*, No. 21-3718, 2022 WL 363866, at *2 (6th Cir. Jan. 7, 2022) (quotation omitted).

A prisoner also must exhaust any available administrative remedies before filing a motion for compassionate release. *See* § 3582(c)(1)(A). That is, he must submit a compassionate-release request first to the warden—even though recent changes in federal law allow a prisoner to proceed to court regardless of whether the warden acts within the allotted time. *See McCall*, 56 F.4th at 1054. "[A]n imprisoned person" may exhaust his remedies in two ways: he "may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020). Courts must enforce the requirement that a defendant exhaust his administrative remedies before filing a motion for compassionate release because doing so "serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others)." *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

As the Government points out, Ford hasn't made any showing that he has exhausted his administrative remedies. *See* DN 287 at 2. The exhaustion requirement, though not jurisdictional, becomes "mandatory" once the government

---

[5] The Sentencing Commission has adopted a policy statement, but it hasn't yet taken effect. Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28,254, 28,254–59 (May 3, 2023) (effective Nov. 1, 2023).

invokes it. *United States v. Taylor*, No. 20-3642, 2020 WL 7383648, at *2 (6th Cir. Nov. 9, 2020) (quotations omitted). So the Court denies Ford's motion on this independent basis.

In any event, the hard-to-follow motion doesn't establish that "extraordinary and compelling" reasons warrant his release. It repeatedly invokes *Sandin v. Conner*, 515 U.S. 472 (1995). *See* DN 285 at 4. But that case did not involve compassionate release. Rather, *Sandin* held that a prisoner's liberty interest is "generally limited to freedom from [a] restraint" that would "impos[e] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484. And Ford's motion points to nothing suggesting that his current confinement is "atypical." He is currently serving his 240-month federal sentence in a federal facility. That a different sovereign has initiated a separate proceeding, for apparently related conduct, whose consequences (if any) Ford will learn later does not render his federal punishment atypical. Ford's situation is serious—but more ordinary than extraordinary. And if he believes his current federal custody is unlawful, he may seek a writ of habeas corpus (and may do so in the future if he comes to believe the Commonwealth has illegally detained him). *Cf. McCall*, 56 F.4th at 1058 (compassionate release doesn't "provide an end run around habeas").

Even if Ford had identified extraordinary and compelling circumstances, the § 3553(a) factors would not justify his release. *First*, the nature and circumstances of Ford's offense counsel against a reduced sentence. As Judge Russell explained in denying the previous compassionate-release motion, Ford "was the leader of a methamphetamine distribution ring" and "responsible for 278.7155 grams of a mixture of methamphetamine" and "2013.5155 grams (approximately 4.44 pounds) of actual methamphetamine." *Ford*, 2021 WL 1395201, at *5; *see also* PSR at 10, 27. Ford, moreover, "was a felon in possession of twenty-three (23) firearm[s] and $298,994.90 in drug proceeds." *Ford*, 2021 WL 1395201, at *5; *see also* PSR at 27. Ford also "obstructed justice by conspiring and attempting to have a confidential source harmed and/or killed for his or her involvement in the investigation." *Ford*, 2021 WL 1395201, at *5; *see also* PSR at 27. Leadership in a drug ring, illegal gun possession, and apparent propensity for violence make Ford an unlikely candidate for compassionate release. *See* § 3553(a)(1).

*Second*, his own history and characteristics also weigh against sentence reduction. Ford committed these crimes while on parole for a prior methamphetamine-manufacturing conviction. *Ford*, 2021 WL 1395201, at *5. His time in custody has been shaky: he's received disciplinary sanctions for alcohol use, drug possession, and drug use. *Id.* His extensive criminal history, too—Ford is a "career offender"—gives the Court little assurance that he won't engage in criminal activity if released. PSR at 33.

*Third*, reducing Ford's sentence would "fail to reflect the seriousness of his offense, promote respect for the law, and provide just punishment for his offense."

*United States v. Thomas*, No. 3:12-cr-119, 2022 WL 1421849, at *3 (W.D. Ky. May 5, 2022); § 3553(a)(2)(A). Conspiracy to possess with the intent to distribute and distributing large quantities of methamphetamine "plainly are serious crimes that can destroy lives, families, and communities." *United States v. Revlett*, No. 5:18-cr-53, 2023 WL 22166, at *5 (W.D. Ky. Jan. 3, 2023). That is particularly so when combined with the number of guns involved in his crime.

In sum, the most relevant of the § 3553(a) factors caution against reducing Ford's sentence. And none of the remaining factors receive attention in Ford's motion or otherwise overcome the factors discussed above.

## ORDER

The Court denies Ford's motion for clarification (DN 277), motion to compel (DN 281), omnibus motion for clarification/motion to compel (DN 282), motion to reduce sentence (DN 285), and motion to "show cause" (DN 290).

cc: Christopher Ford, *pro se*
    counsel of record

Benjamin Beaton, District Judge
United States District Court

August 17, 2023